# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT LOUISVILLE

## CIVIL ACTION NO. 3:13-CV-622-JDM

JODY LEE MACIAS                                                                                  PLAINTIFF

V.

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY                DEFENDANT

## **MEMORANDUM OPINION**

The plaintiff, Jody L. Macias, filed this action pursuant to 42 U.S.C. §405(g), seeking judicial review of an administrative decision of the Commissioner of Social Security, who denied his application for disability insurance benefits. At issue is whether the administrative law judge erred by failing to properly evaluate the evidence regarding Mr. Macias's physical residual functional capacity. Mr. Macias asserts that the ALJ erred by not give controlling weight to the opinion of Mr. Macias's treating physician and did not give sufficient weight to Mr. Macias's subjective complaints.

After reviewing the parties' fact and law summaries and the administrative record, the court concludes that the ALJ erred and that this opinion should be reversed and remanded for further proceedings.

## I.

Mr. Macias is a veteran of the Iraq War, who was severely injured in September 2004, when an improvised explosive device detonated near him, fracturing his ankle so badly it needed surgical repair, removing a large portion of one of his calves, sending shrapnel into his back,

neck, face and lower legs, and perforating his left eardrum.[1] That explosion (and the injuries it caused), along with other aspects of his combat experience, also caused him to suffer from depression and post-traumatic stress disorder.[2] Nevertheless, he attempted to work for several years and was largely successful until 2011.[3] In the latter part of that year, he quit working due to his back pain and inability to deal well with routine workplace stressors.[4]

Mr. Macias filed an application for disability insurance benefits in September 2011 and alleged he became disabled in October 2004.[5] After his application was denied by the state agency, he requested a hearing with an administrative law judge (an "ALJ"). Following the evidentiary hearing,[6] at which Mr. Macias and a vocational expert testified, the ALJ issued an opinion in which she determined that Mr. Macias suffers from the severe impairments of "history of right ankle fracture status post shrapnel wounds to legs with associated nerve damages, degenerative disc disease of the lumbar spine, post-traumatic stress disorder (PTSD), and depression," none of which, either singly or in combination, meet or equal the criteria of any of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1.[7]

The ALJ further determined that Mr. Macias retains the residual functional capacity to perform sedentary work with a sit/stand option, and permissible use of a cane, plus other limitations necessary to accommodate his physical and mental impairments.[8] The ALJ based these conclusions on his review of Mr. Macias's treatment records; the opinion evidence from treating sources, consultative examiners, and record-reviewing consultants; and Mr. Macias's

---

[1] *See* Admininstrative Record at 390-98 (hereinafter "R. at __").
[2] *See, e.g.,* R. at 860-77.
[3] R. at 340.
[4] *See* R. at 46, 376-77.
[5] R. at 304, 329.
[6] R. at 39-70.
[7] R. at 21-33.
[8] R. at 25-30.

reported symptoms and activities. In so doing, the ALJ gave only little weight to the opinion of Mr. Macias's treating physician, who recommended that Mr. Macias be limited to four-hour work days, and opined that back pain would likely cause Mr. Macias to be absent from work two days each month.[9] The ALJ deemed this inconsistent with Mr. Macias's reported activities of riding motorcycles, skydiving, and caring for his mother.[10] He also discounted the credibility of Mr. Macias's complaints of back pain for the same reasons, but included additional supporting facts gleaned from Mr. Macias's medical treatment records.[11]

Based on the ALJ's assessment of Mr. Macias's residual functional capacity, the vocational expert testified that Mr. Macias is not capable of returning to his past relevant work, but can perform certain jobs that exist in the national economy.[12] The vocational expert also testified, however, that no jobs would be available if Dr. Cavanaugh's recommendations were adopted.[13] Mr. Macias asks that this court set aside the Commissioner's decision and, based on the existing evidence in the record, remand this matter, preferably with instructions that Mr. Macias be awarded benefits, but at least for a *de novo* review.

## II.

This court must affirm the conclusions of the Commissioner of Social Security unless the administrative law judge failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. §405(g). "Substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and the reviewing court must affirm if substantial evidence exists, even if it would have reached

---

[9] R. at 30, 679.
[10] R. at 30.
[11] R. at 26-29.
[12] R. at
[13] R. at 69.

3

a different conclusion. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008)(citing *Richardson v. Perales,* 402 U.S. 389, 401 (1971)). That being said, the concept of "substantial evidence" cannot be satisfied by a highly selective reading of the administrative record, it must be supported by the record "taken as a whole." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Id*. at 388 (internal quotes and citations omitted).

With respect to the correct legal standards, administrative law judges must perform a five-step analysis to determine whether a claimant is disabled within the meaning of the Social Security Act:

1. If the claimant is engaged in substantial gainful activity, he is not disabled.

2. If the claimant is not engaged in substantial gainful activity, but his impairment is not "severe," he is not disabled.

3. If the claimant is not engaged in substantial gainful activity and is suffering from a "severe" impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

4. Otherwise, if the claimant's impairment does not prevent him from doing his past relevant work, she is not disabled.

5. Even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

20 C.F.R. § 404.1520; *see also Jordan,* 548 F.3d at 422.

The claimant bears the burden of proof with respect to the first four steps. *Jordan*, 548 F.3d at 422. The burden shifts to the SSA with respect to the fifth step, however, and at that step the Social Security Administration bears the burden of proving that there are available jobs in the

national economy that the claimant is capable of performing. *Id.* at 423 (citing *Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 391-92 (6th Cir.1999)). The claimant, however, retains the burden of proving the extent of his residual functional capacity. *Id.* (citing *Her,* 203 F.3d at 392).

# III.

**A. Whether the ALJ Properly Evaluated the Opinion of Mr. Macias's Treating Physician**

The ALJ's discussion of Dr. Cavanah's opinions regarding Mr. Macias's physical capabilities consists, in its entirety, of the following statements:

> Dr. Cavanah, a treating source, recommended in late 2011 the claimant be limited to working four hours per day with up to two days off twice per month for flares of back pain (Exhibit 6F). These findings were afforded little weight. The undersigned notes the claimant's own reported activities of riding motorcycles, skydiving, and being the primary caregiver for his mother are inconsistent with such findings (5F). In addition, the claimant's own reports of taking pain medication only on an as needed basis are inconsistent with a finding of such debilitating back pain with frequent flares (Exhibits 5F, 6F, 9F).[14]

The standards imposed on an administrative law judge's treatment of medical evidence are set forth in 20 C.F.R. §404.1527. Pursuant to the treating physician rule, "the administrative law judge 'will' give a treating source's opinion controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record.'" *Cole v. Comm'r of Soc. Sec.,* 661 F.3d 931, 937 (6th Cir. 2011)(citing 20 C.F.R. §404.1527(d)(2)).

---

[14] R. at 30-31.

5

If the administrative law judge does not accord controlling weight to the opinion of a treating physician, he must then balance the following factors to determine what weight to give the opinion:

1. the length of the treatment relationship and the frequency of examination,
2. the nature and extent of the treatment relationship,
3. the supportability of the opinion,
4. the consistency of the opinion with the record as a whole, and
5. the specialization of the treating source.

*Id.* (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). The Sixth Circuit is mindful that administrative law judges have "a clear duty" to "always give good reasons" for their determination of the weight to give a treating source's opinion, *id.* at 937-38; 20 C.F.R. § 404.1527(d)(2), and that those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight," Soc. Sec. Rul. No. 96–2p.

Other than stating that Dr. Cavanah's opinion is inconsistent with Mr. Macias's own reports of his occasional activities and medication schedule, the ALJ made no further effort to consider Dr. Cavanah's opinion in light of the requirements established by 20 C.F.R. § 404.1527.[15] The ALJ discussed the supportability of the opinion, but his analysis was cursory and, as noted, consisted only of a comparison to Mr. Macias's reported activities and medications, not to any other treatment notes or diagnostic tests. The ALJ did not discuss Dr. Cavanah's specialty, or the length, nature, extent, or frequency of the treatment relationship.

---

[15] R. at 29.

Nor is the analysis, such as it is, adequately specific. Although the ALJ listed four particular activities that Mr. Macias putatively claimed to be engaged in (motorcycle riding, skydiving, serving as his mother's primary caregiver, and taking morphine only as needed), the ALJ's method of citation with respect to this particular record makes it very difficult for subsequent reviewers to understand his reasons for assigning less than controlling weight to Dr. Cavanah's opinions.

The evidence the ALJ cited to generally in support of his conclusions consists of 420 pages of treatment record from the V.A. Medical Center, which span four years and three separate sections of the Administrative Record (*i.e.,* Exhibits 5F, 6F, and 9F), two of which have significant temporal overlap and many duplicative pages.[16] The opinions of Dr. Cavanah, which the ALJ cites to merely as Exhibit 6F, are contained in less than one page of a treatment record amongst 172 pages of treatment records.[17] Mr. Macias's occasional reports of motorcycle riding and skydiving, none of which the ALJ cites by page, or even date, are sprinkled throughout the over-400 pages of records that comprise Exhibits 5F and 6F. None appear to be contained in Exhibit 9F, although many of those pages are so faint they are illegible. The court is not aware of any requirement that an ALJ cite to specific pages in his decision, but where, as here, the records cited to are voluminous and partially illegible, and the analysis is cursory, the *de facto* result is that the court cannot adequately determine whether the ALJ's decision comports with the applicable case law and regulations.

Moreover, some of the ALJ's factual underpinnings appear to be incorrect. The court could find no legible treatment record in Exhibits 5F, 6F, or 9F in which Mr. Macias stated that he served as his mother's primary caretaker. One record mentions that (as of April 2011), he

---

[16] *See* R. at 439-840, 860-77.
[17] R. at 679.

lived with his mother, who was disabled, and had helped her move in in 2007, but does not state that he takes care of her.[18] The situation appears to be to the contrary. At his hearing in November 2010, he stated that his mother lived with him and his wife and, instead of him taking care of her, she helped take care of him. Mr. Macias testified that he did not prepare his own meals, do the dishes, pay the bills, or take care of his pets – his mother or wife did.[19]

With respect to Mr. Macias's recreation activities, the court found records in which Mr. Macias reported that he had gone motorcycle riding, but only on occasion, and only when his back pain temporarily decreased enough to permit him to do so. At his hearing, Mr. Macias testified that he had ridden his motorcycle recently, but "recently" in that context was three or four months prior to the hearing. He testified he had since garaged the motorcycle and let the battery go dead.[20] The court could find no evidence that he rode his motorcycle daily, or even frequently. Similarly, although the court found records from May 2011, in which Mr. Macias reported that he had formerly enjoyed skydiving, but quit due to the condition of his back,[21] the court could not find records that Mr. Macias continued to go skydiving after he ceased working due to his back pain.

As for the frequency of Mr. Macias doses of pain medicine, the most recent medical records (none of which were specifically identified by the ALJ) indicate Mr. Macias takes morphine in either 15 mg or 30 mg does, as needed.[22] He confirmed at the hearing that he took morphine only as needed, but he did so in the context of explaining that it made him high, so he

---

[18] R. at 512.
[19] R. at 42, 53-55.
[20] R. at 57.
[21] R. at 494, 512.
[22] R. at 842, 871.

tried whenever possible either to endure the pain as long as possible, or avoid activities that would aggravate it.[23]

All of the foregoing being said, there is evidence in the record that might support the ALJ's ultimate conclusions. For example, Dr. Cavanah's opinion was rendered in the context of his completion of a Family Medical Leave Act form on Mr. Macias's behalf. Perhaps his opinion might therefore be best understood as being limited to that context and therefore stating only that Mr. Macias needed a reduced work day temporarily, not long-term. Perhaps not. Also, in another section of his opinion, the ALJ stated that there exist records of Mr. Macias's medical care in the year before his hearing in which he describes his pain levels as two, or three, or four, on a scale of one to ten. Which records, specifically, the ALJ was referring to the court cannot know, as they are cited to only generally, as the 230-page Exhibit 5F and the almost-illegible Exhibit 9F, but the court was able to find a few that are consistent with the ALJ's statements. Whether Mr. Macias was taking pain-ameliorating medicine when these records were made, is unknown, however. But all of these are moot points.

The Sixth Circuit has emphasized that an ALJ's failure to give good reasons for rejecting a treating physician's opinion can be reversible error, even if the decision is otherwise supported by substantial evidence. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004). For, when an ALJ fails to conduct the analysis required by 20 C.F.R. § 404.1527, he deprives the court of its ability to conduct a meaningful review of his decision. *See id.,* 378 F.3d at 544. The ALJ's cursory analysis of the substance of Dr. Cavanah's opinion falls short of the analytical and explanatory requirements established by the applicable regulations and existing case law. It must therefore be reversed.

---

[23] R. at 61-65.

9

### B. Whether the ALJ Properly Evaluated Mr. Macias's Subjective Complaints

The ALJ's evaluation of Mr. Macias's credibility regarding his subjective complaints suffers from errors similar to those in his analysis of Dr. Cavanah's opinion. It contains the same not-fully-accurate analysis of Mr. Macais's caretaking and recreational activities, coupled with inherently vague citations to the voluminous record.[24] It also relied in part on an October 2010 CT scan of Mr. Macias's back, which showed a possible impingement of a lumbar disc on a nerve root,[25] without clarifying that the scan was obtained almost a full year before Mr. Macias quit working due to his back pain, or commenting on its possible predictive value given Mr. Macias's diagnosis of *degenerative* disc disease. Nevertheless, the ALJ's evaluation of Mr. Macias's credibility consists of several paragraphs in which the ALJ discussed several specific pieces of evidence regarding Mr. Macias's reported pain during more recent medical visits, his reluctance to undergo recommended therapies, his use of an un-prescribed (and possibly unnecessary cane).

The Sixth Circuit has been as consistent in its position regarding judicial review of an ALJ's credibility determination, as its position regarding the required elements of an ALJ's evaluation of a treating source's opinion. Absent a compelling reason, a reviewing court should not disturb an ALJ's credibility findings. *See, e.g., Smith v. Secretary*, 307 F.3d 377, 379 (6th Cir. 2001). While the ALJ's analysis of the opinion evidence regarding Mr. Macias's claimed pain and functional limitations is premised on some error, it was nevertheless adequately detailed and accurate to satisfy the requirements of 20 C.F.R. § 404.1529 and Social Security Ruling 96-7p, which specify the factors an ALJ must use when evaluating a claimant's alleged symptoms and mandate a certain level of description in the ALJ's analysis. The magistrate judge therefore

---
[24] R. at 27-29.
[25] R. at 28-29.

concludes that the ALJ did not commit reversible error in his assessment of Mr. Macias's credibility.

**IV.**

For the foregoing reasons, the court concludes that the ALJ failed to appropriately evaluate the opinions of Mr. Macias's treating physician. The court will therefore issue an order remanding this case for further proceedings pursuant to 42 U.S.C. § 405(g).

DATE:

cc: counsel of record